IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARON REEDER,             :      Case No. 4:14-cv-0161
                           :
          Plaintiff        :      (Judge Brann)
                           :
     v.                    :
                           :
AETNA LIFE INSURANCE CO.,  :
                           :
          Defendant.       :

**MEMORANDUM**
June 9, 2015

Pending before this Court are two motions for summary judgment on the complaint, one filed by Plaintiff Sharon Reeder and the other filed by Defendant Aetna Life Insurance Co. Plaintiff's complaint seeks a reversal of a decision by the Defendant to terminate her long term disability benefits, pursuant to §501(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* (hereinafter "ERISA").  Both parties assert that they are entitled to judgment as a matter of law on the claim set forth in the complaint.  The matter has been fully briefed and is now ripe for disposition.  In accordance with the following reasoning, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.  Plaintiff's claim for long term disability benefits under ERISA § 1001, *et seq.*, is dismissed.

1

## I. BACKGROUND

The relevant facts are as follows.  Plaintiff Sharon Reeder was employed by

Community Health Systems (hereinafter "CHS") as an Assistant Chief Nurse

Officer assigned to Lock Haven Hospital, where she was an eligible participant in

the CHS Long Term Disability Plan (hereinafter the "Plan"). Def.'s Statement of

Facts ¶ 1-2, September 17, 2014, ECF No. 19 (hereinafter "Def.'s SOF"); Pl.'s

Statement of Facts ¶ 2, September 16, 2014, ECF No. 16 (hereinafter "Pl.'s SOF").

The Plan was funded through a Group Policy issued by Defendant Aetna Life

Insurance Company. Def.'s SOF ¶ 3; Pl.'s SOF ¶ 1, 3. Under the Plan, the test for

disability provides:

> In the first 24 months of any period of disability, you will be deemed
> disabled on any day if:
>> - you are not able to perform the material duties of your own
>> occupation solely because of : disease or injury; and
>> - your work earnings are 80% or less of your adjusted predisability
>> earnings.
> After the first 24 months of a period of disability, you will be deemed to be
> disabled on any day if you are not able to work at any reasonable occupation
> solely because of:
>> - disease; or
>> - injury.

Def.'s SOF ¶ 8; Pl.'s SOF ¶ 4-6.  Beginning on June 13, 2007, Plaintiff was

approved for short term disability benefits for a period of 26 weeks based on an

initial co-morbid diagnosis of diabetes mellitus, hypertension, hyperdermia,

depression, and severe anxiety. Def.'s SOF ¶ 11-12; Pl.'s SOF ¶ 7. She was later

approved for long term disability benefits beginning September 11, 2007, which

benefits were renewed once again in June 2009. Def.'s SOF ¶ 13, 14; Pl.'s SOF ¶

7, 9.

Sometime between July and August 2009, Plaintiff began to work part-time

at light duty capacity as a clinical instructor at the Pennsylvania College of

Technology.  Def.'s SOF ¶ 15; Pl.'s SOF ¶ 10.  Aetna conducted an analysis of this

job description, which summarized the position as "responsible for education

leadership, student instruction, and/or clinic supervision on a part-time basis in the

Nursing/Practical Nursing Programs" and listed some physical requirements of the

position including standing or walking for extended periods of time, having full

range of motion for multiple physical positioning as well as motor dexterity.

Def.'s SOF ¶ 18.  Though Plaintiff does not dispute that this summary is consistent

with the written description of Plaintiff's part-time position, she maintains that she

did not exercise many of these responsibilities because she was not physically

capable of doing so; rather, the nursing division was aware of her capabilities and

accommodated her physical limitations.  Pl.'s Counter Statement of Facts ¶ 18,

October 21, 2014, ECF No. 26 (hereinafter "Pl.'s Counter SOF").

On March 17, 2010, Plaintiff's treating physician, Dr. Adroja, completed a

Capabilities and Limitations Worksheet (hereinafter "CLW") which certified

Plaintiff's ability to frequently lift no more than ten pounds, occasionally climb,

lift, forward reach, and carry.  Def.'s SOF ¶ 21. She was also certified to frequently

engage in hand grasping, fine and gross manipulation, repetitive motion, sitting,

standing, and walking.  *Id.* However, Dr. Adroja stated that she could never crawl,

kneel, pull, push, reach above the shoulder, bend, twist, or stoop. Pl.'s Counter

SOF ¶ 21.  Dr. Adroja further opined that Plaintiff was only capable of working

part-time. Def.'s SOF ¶ 21.

Several months later, on June 23, 2010, Plaintiff underwent a left rotator cuff

repair by her orthopedic surgeon, Dr. Ronald DiSimone. Def.'s SOF ¶ 22; Pl.'s

SOF ¶ 11; 27.  Following this surgery, Plaintiff was unable to work at all due to

pain and decreased range of motion in her shoulder, until her surgeon released her

to limited[1] duty, right-hand work, with restrictions on lifting, pulling, and pushing.

Pl's SOF ¶ 28-31; Def.'s SOF ¶ 23; Pl.'s Counter SOF ¶ 23.  She returned to work

on a part-time basis in January 2011. Def.'s SOF ¶ 23; Pl.'s SOF ¶ 12.

Nevertheless, Defendant continued to review updated medical records from

Plaintiff's treating physician, Dr. Adroja, and Plaintiff's surgeon, Dr. DiSimone

(together, Plaintiff's "treating physicians"), and found that the records supported

functional impairment precluding full-time sedentary work due to limited range of

motion of left arm which required further physical therapy. Def.'s SOF ¶ 24.  An

Attending Physician Statement and CLW from Dr. Adroja dated May 2, 2011

---

[1] While Dr. DiSimone explicitly stated that Plaintiff was released to limited duty work, Defendant has characterized this as light-duty work.  Plaintiff disagrees, although she does not explain what she believes Dr. DiSimone meant by "limited duty."

reiterated his belief that Plaintiff could work only at a part-time level due to shoulder pain.  Def.'s SOF ¶ 25-26.  However, after an internal clinical review of Plaintiff's medical records from March through May 2011, the clinician found that the records provided insufficient quantifiable clinical findings to support Plaintiff's subjective complaints of chronic pain; the clinician therefore recommended an independent occupational medical review and peer outreach to Plaintiff's two treating physicians.  Def.'s SOF ¶ 27.

On June 13, 2011, Dr. Donald T. Lee, board certified in preventative and occupational medicine, conducted an independent review of Plaintiff's medical records from December 10, 2009 through May 17, 2011. Def.'s SOF ¶ 28; Pl.'s SOF ¶ 13.  He attempted to speak with Dr. DiSimone; however, the record is unclear as to whether he was ever able to do so. Def.'s SOF ¶ 29.  He did speak with Dr. Adroja, who stated his continued belief that Plaintiff was functionally impaired due to limited range of motion of her shoulder and lifting restrictions and therefore was only capable of working on a part time basis. Def.'s SOF ¶ 30; Pl.'s SOF ¶ 35.  Dr. Lee ultimately found that Plaintiff had functional impairment and was restricted in certain ways; however, he concluded that the medical documentation supported an ability to do light duty work on a full time basis. Def.'s SOF ¶ 31; Pl.'s SOF ¶ 36.  After reading Dr. Lee's report, Dr. DiSimone responded to inform Aetna that he did not believe Plaintiff was capable of working

light duty on a full-time basis but rather opined that she could perform at a sedentary level on a full-time basis. Def.'s SOF ¶ 33; Pl.'s SOF ¶ 37.

On April 25, 2012, Defendant determined that a Functional Capacity Examination (hereinafter "FCE") would be appropriate to clarify Plaintiff's functionality and to reconcile the competing opinions of the three physicians.[2] Def.'s SOF ¶ 36; Pl.'s SOF ¶ 16.  The examiner at Plaintiff's FCE found that Plaintiff did not meet the requirement of sedentary strength work duty due to her inability to lift, carry, push, pull with two hands or sit for greater than ten minutes. Pl.'s SOF ¶ 16; Def.'s SOF ¶ 37.  However, the examiner also concluded that Plaintiff had provided "inconsistent effort during functional testing" and repeated the phrase "I know I look good on the outside." Def.'s Counter Statement of Facts ¶ 16, October 10, 2014, ECF No. 23 (hereinafter "Def.'s Counter SOF"). Moreover, the examiner determined that Plaintiff's subjective pain rating was not consistent with her demeanor because she never provided a pain rating greater than 5 out of 10 even though she had significant difficulty lifting an unweighted box. *Id.* Defendant determined that the FCE results were invalid because of Plaintiff's inconsistent effort and refusal to perform material handling using the left hand. Def.'s SOF ¶ 38.

---

[2] Those opinions are as follows: (1) Dr. Adroja found that Plaintiff was capable of only part-time sedentary work; (2) Dr. DiSimone opined that Plaintiff was capable of full-time sedentary work; and (3) Dr. Lee determined that Plaintiff was capable of full-time light duty.  All doctors established lifting, pushing, pulling and reaching restrictions. Def.'s SOF ¶ 36.

Following the FCE, Defendant scheduled an Independent Medical Exam (hereinafter "IME") for September 28, 2012 with Dr. Gregory Billy, a physical medicine and rehabilitation physician. Pl.'s SOF ¶ 19; Def.'s SOF ¶ 39. Dr. Billy reviewed various medical records of Plaintiff's and also conducted a physical examination. Def.'s SOF ¶ 40.  Dr. Billy found that Plaintiff was capable of working full time at a sedentary capacity. Def.'s SOF ¶ 42; Pl.'s ¶ 19.  Dr. Adroja disagreed with Dr. Billy's findings and once again reiterated his belief that Plaintiff was incapable of full-time work due to the limited range of motion in her shoulder. Def.'s SOF ¶ 43; Pl.'s SOF ¶ 20.

Finally, Defendant requested a Transferable Skills and Labor Market Analysis (hereinafter "TSA/LMA") be conducted.  Def.'s SOF ¶45; Pl.'s SOF ¶ 21.  That assessment explained that the Dictionary of Occupational Titles identified Plaintiff's current part-time position as a clinical instructor as "light duty." Def.'s SOF ¶47.  It therefore named four occupations, each accepting the "no reaching restriction," each paying more than Plaintiff's target wage, and each supported in the labor market at issue.[3] Def.'s SOF ¶49; Pl.'s SOF ¶ 21.

Between the time of the FCE and the TSA/LMA, Plaintiff continued to report to Dr. Adroja that she was having pain in her left shoulder and Dr. Adroja

---

[3] The parties dispute the level of physical activity of these four occupations.  Defendant characterizes them as sedentary, while Plaintiff maintains that frequent lifting of (10) pounds is typically considered light duty rather than sedentary.  It is unclear to this Court whether the positions identified by the TSA/LMA involved frequent lifting of (10) pounds, or whether that is merely a description of the work capabilities Defendant provided to the TSA/LMA referral. Def.'s SOF ¶49; Pl.'s Counter SOF ¶49.

maintained that she was limited to part-time work and could not lift more than ten pounds. Pl.'s SOF ¶ 44-50. Defendant points out that in only some of Dr. Adroja's examinations of Plaintiff from that period did Plaintiff identify experiencing shoulder pain. Def.'s Counter SOF ¶ 45-46. Defendant notes specifically that Plaintiff stopped complaining about her shoulder pain in May 2012 and only resumed doing so on August 28, 2012, four days after being informed by Defendant that it was sending her for an IME. *Id.* at 47. Defendant further points out that in her visit with Dr. Adroja on November 29, 2012 Plaintiff stated that her large breast size and wearing a bra exacerbated her back and shoulder pain, and that there was no more discussion of her left shoulder. *Id.* at 49.

By letter dated February 5, 2013, Defendant informed Plaintiff of its decision to terminate Plaintiff's benefits on the basis that Plaintiff no longer met the disability criteria set forth in the Plan. Def.'s SOF ¶ 50; Pl.'s SOF ¶ 23; Def.'s Counter SOF ¶ 23. The letter summarized Defendant's internal medical reviews, the FCE, the IME, and the TSA/LMA. It further acknowledged Dr. Adroja's opinion limiting Plaintiff to part time work, but noted that his opinion was contrary to the medical evidence and that he failed to provide Defendant with any supporting medical rationale for his opinion. Def.'s SOF ¶ 51. The letter also acknowledged Dr. DiSimone's opinion that Plaintiff was capable of full-time sedentary work with certain restrictions. *Id.*

8

On April 1, 2013, Plaintiff filed an appeal of Defendant's decision to terminate her long term disability benefits. Def.'s SOF ¶ 53; Pl.'s SOF ¶ 24. As the appeal was pending, Defendant referred the appeal file out for another independent medical review, this time with Dr. Siva Ayyar, board certified in preventative and occupational medicine. Def.'s SOF ¶ 55, 57; Pl.'s SOF ¶ 53. Dr. Ayyar found that Plaintiff was capable of full-time sedentary work with certain restrictions. Def.'s SOF ¶ 57; Pl.'s SOF ¶ 53. Dr. Ayyar acknowledged Dr. Adroja's opinions but concluded that neither the medical records nor the weight of the medical evidence substantiated or corroborated a finding that Plaintiff was only capable of working in a part-time capacity. Def.'s SOF ¶ 59.  By letter dated July 25, 2013, Defendant concluded its appellate review of the initial decision to terminate benefits and upheld its decision. Def.'s SOF ¶ 61; Pl.'s SOF ¶ 25.[4]  The instant lawsuit ensued.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" where it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

---

[4] Plaintiff points to a letter from Dr. Adroja which reiterated his continued opinion and further added information regarding additional medical issues that Plaintiff was experiencing which would prevent her from returning to work. He states that he was "actually surprised that with her new problem with her other shoulder and her multiple co-morbid condition[s], which include IDDM, uncontrolled DM, skin cancer and depression, she is even able to return to work part time.  It is my professional opinion that she may be permanently disabled to get any gainful employment of her own profession." Pl.'s SOF ¶ 54.  However, Defendant notes that this letter was dated July 30, 2013, which was nearly a month after Defendant had requested a response from Dr. Adroja and five days after Defendant had rendered its decision on Plaintiff's appeal.  Def.'s Counter SOF ¶ 54.

477 U.S. 242, 248 (1986).  A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  *Id.* at 331.

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); see also *Anderson*, 477 U.S. at 248–50.

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003). Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. ERISA STANDARD OF REVIEW

29 U.S.C. § 1132(a)(1)(B) [ERISA § 502(a)(1)(B)] creates a civil cause of action for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This means that in order to assert a claim under this provision, the participant must demonstrate that he has a legally

enforceable right to benefits under the plan and that the plan administrator improperly denied those benefits. *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citing *Hooven v. Exxon Mobil Corp.*, 465 F.3d 366, 574 (3d Cir. 2006)).

According to the United States Supreme Court, "a denial of benefits charged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A de novo review would require the court to determine whether the administrator or fiduciary made the correct decision in denying benefits. *See Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Conversely, if the challenged plan expressly grants discretionary authority to the administrator or fiduciary, "[t]rust principles make a deferential standard of review appropriate"; in that case, the standard of review of the district court is 'arbitrary and capricious.' *See Fleisher*, 679 F.3d at 120 (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 101).

"An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993)) (internal quotation marks

12

omitted).  Under an arbitrary and capricious standard, courts must defer to the

decision of the administrator as long as it is "reasonably consistent with

unambiguous plan language." *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d

Cir. 2001).

In the case at bar, the parties do not dispute that the Plan expressly gave the

administrator discretionary authority to interpret the Plan and make eligibility

determinations.  The Plan states:

> [Aetna] has complete authority to review all denied claims for benefits under
> this policy.  In exercising such fiduciary responsibility, Aetna shall have
> discretionary authority to:
>> Determine whether and to what extent employees and beneficiaries
>> are entitled to benefits; and
>> Construe any disputed or doubtful terms of this policy.
>
> Aetna shall be deemed to have properly exercised such authority.  It must
> not abuse its discretion by acting arbitrarily and capriciously.  Aetna has the
> right to adopt reasonable:
>> Policies;
>> Procedures;
>> Rules, and
>> Interpretations;
>
> of this policy to promote orderly and efficient administration.

Plaintiff agrees that this language within the Plan would ordinarily make an

arbitrary and capricious standard of review appropriate.

Plaintiff argues, however, that the Court should apply a heightened standard

of review because of certain enumerated procedural irregularities in the handling

by Defendant of Plaintiff's administrative claim for benefits and a structural

conflict in Defendant's dual role as funder and administrator of the Plan.  She cites

13

to *Leonard v. Educators Mut. Life Ins. Co.* for the proposition that a heightened

standard of review under ERISA is warranted if there has been procedural

irregularity, bias, or unfairness in the review of a claimant's application for

benefits. *See Leonard v. Educators Mut. Life Ins. Co.*, 620 F.Supp.2d 654, 670

(E.D.Pa. 2007) (citing *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393

(3d Cir. 2000)).  Examples of such procedural irregularities would include: "(1) the

insurer's reversal of its original determination without the examination of

additional evidence; (2) a self-serving selectivity in the use of evidence; and (3) a

bias in decision-making to the benefit of the insurer." *Russell v. Paul Revere Life

Ins. Co.*, 148 F.Supp.2d 392, 406 (D.Del. 2001) (interpreting and citing *Pinto*).

Here, Plaintiff argues that there were three procedural irregularities in

Defendant's treatment of Plaintiff's administrative claim for benefits.  She

contends that: (1) Defendant's decision displayed a self-serving selectivity in the

use and interpretation of physicians' reports because Defendant's reading of the

evidence failed to consider opinions of treating physicians, gave more weight to

the views of its own file review consultants, took positive comments out of context

and ignored or misunderstood diagnoses; (2) Defendants unreasonably rejected

Plaintiff's self-reported and subjective evidence of pain; and (3) the vocational

assessment performed by Defendant failed to differentiate between Plaintiff's own

occupation and the purported reasonable occupations as to how she could perform

14

those occupations with her limitations.[5]  Plaintiff relies upon these same procedural irregularities as the basis for her claim for benefits under § 502(a)(1)(B). Additionally, Plaintiff argues that because Defendant exercised the dual role of deciding a claim for benefits as well as paying benefits under the plan, there existed a structural conflict which alone calls for a heightened review.

Acknowledging that such a structural conflict did in fact exist, Defendant first argues that the line of cases relied upon by Plaintiff, specifically *Leonard* and *Pinto*, have been overruled by the Supreme Court in *Met. Life Ins. Co. v. Glenn* and therefore those cases are no longer good law.  554 U.S. 105 (2008).  It argues that under *Glenn*, a conflict of interest or procedural irregularity does not automatically change the standard of review but is, rather, just one factor to be considered.  Moreover, Defendant argues that its decision was based on a thorough review of all available evidence and it was not self-serving in the manner in which it weighed the evidence.

It is the Court's view that *Glenn* controls in the present situation and that case has affirmed Defendant's position that a conflict be weighed as just one factor in determining whether there has been an abuse of discretion.  *See Glenn*, 554 U.S. at 115.  Moreover, any procedural irregularity will be treated similarly as one factor in review of Defendant's decision, rather than automatically heightening the

---

[5] The Court is somewhat confused by the meaning of this allegation. Based on Plaintiff's argument in her supporting brief, it appears to this Court as primarily a disagreement with the results of the vocational analysis, or the information Defendant provided to the analyst regarding Plaintiff's abilities.

standard of review. *Glenn* explicitly dealt only with conflicts of interest arising from the dual role of an entity as an ERISA plan administrator and payer of plan benefits, holding that a conflict of interest is only one factor to be considered in an abuse of discretion analysis. *Id.*at 105-7. However, the case impliedly extended that holding to procedural irregularities through its consideration in the same manner of certain factors which "suggested procedural unreasonableness." *Id*. at 118 (determining whether MetLife abused its discretion by considering various factors including that "MetLife had emphasized a certain medical report that favored a denial of benefits, had deemphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence."). Moreover, subsequent cases have explicitly held that procedural irregularities are treated similarly to conflicts of interests in this regard. *See, e.g., Brangman v. AstraZeneca, LP*, 952 F.Supp.2d 728, 738 (E.D.Pa. 2013) ("Just as structural conflicts factor into a court's review, so too do procedural irregularities or other evidence of bias."); *see also Shvartsman v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson*, No. 11-03643, 2012 WL 2118126 at * 11 (D.N.J. June 11, 2012) (finding that evidence of procedural abnormalities or other bias is to be considered a factor like a conflict of interest is considered as stated in *Glenn*).

Consistent with this reasoning, this Court will consider the structural conflict in Defendant's dual role as funder and administrator of the Plan in determining whether Defendant abused its discretion in terminating Plaintiff's long term disability benefits.  However, apart from denoting the existence of a potential conflict, Plaintiff has pointed to no evidence on which this Court could conclude that Defendant's dual role affected its decision-making in any way.  On the other hand, neither has Defendant pointed to any evidence which would demonstrate that it had taken active steps to reduce potential bias and promote accuracy.  *See Glenn*, 554 U.S. at 117 ("The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.").  Consequently, the structural conflict must be taken at face value by this Court, without any explanatory context.

With regard to the alleged procedural irregularities, this Court will address each in turn.  In the first, Plaintiff contends that Defendant's decision displayed a self-serving selectivity in the use and interpretation of physicians' reports because Defendant's reading of the evidence failed to consider opinions of treating physicians, gave more weight to the views of its own file review consultants, took positive comments out of context and ignored or misunderstood diagnoses. Defendant argues, rather, that it did not cherry-pick or otherwise inappropriately select certain evidence while ignoring the opinions of Plaintiff's treating physicians.

If Defendant did in fact ignore all or part of the medical opinions of Plaintiff's treating physicians, this would amount to a procedural irregularity.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (holding that an administrator may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians.").  However, Plaintiff has provided no evidence from which a fact-finder could conclude that Defendant ignored these reports entirely in making its decision to terminate benefits.[6]  Rather, Defendant actually referenced both treating physician opinions in its original decision letter

---

[6] Further, there is no evidence that Defendant ignored certain portions of the treating physicians' opinions.  As the Court will momentarily discuss, Defendant's decision to weigh one doctor's opinion over that of the treating physician does not mean that the latter opinion was ignored and that Defendant "arbitrarily refuse[d] to credit" those portions of the opinions with which it ultimately disagreed.

and its letter in response to Plaintiff's appeal.  Moreover, Defendant actually

agreed with several of the recommendations of Plaintiff's treating physicians.

Importantly, merely placing greater weight on the consulting doctors' and

the IME's opinions than on the medical opinions of Plaintiff's treating physicians

does not amount to a procedural irregularity. *See Nord*, 538 U.S. at 834 ("[C]ourts

have no warrant to require administrators automatically to accord special weight to

the opinions of a claimant's physician; nor may courts impose on plan

administrators a discrete burden of explanation when they credit reliable evidence

that conflicts with a treating physician's evaluation.").  While those opinions relied

upon by Defendant diverged in some aspects from the opinions of Plaintiff's

treating physicians, Plaintiff has provided no evidence as to why those opinions

were not credible, other than that they disagreed with the opinions of Plaintiff's

treating physicians.  Defendant was under no obligation to credit the opinions of

Plaintiff's treating physicians more than the credible opinions of their own

examiners.

Although Plaintiff attempts to characterize Defendant's decision to rely on

its own doctors' opinions as "self-serving selectivity," Plaintiff has presented no

evidence that such self-serving selectivity exists; her contention, distilled to its

essence, appears to be nothing more than that Plaintiff's treating physicians had

different opinions than those of Defendant's doctors and that Defendant should

19

have relied on her treating physicians' opinions instead.  However, it is not, and cannot be, a procedural irregularity for a Plan administrator to make a factual determination with which one party merely disagrees.[7]

Plaintiff next avers that Defendant ignored her subjective reports of pain and her resulting limitations, arguing that a failure to consider self-reported symptoms is arbitrary and constitutes a procedural irregularity when no reasonable basis for rejecting this subjective evidence is identified.  Defendant responds that it did weigh Plaintiff's subjective reports of pain and that, specifically, Dr. Billy acknowledged that his opinion finding Plaintiff functionally impaired was due, in part, to her reports of lateral shoulder pain and limited range of motion.

There is simply no evidence in the record to support Plaintiff's assertion that Defendant ignored her subjective reports of pain and limitation.  Specifically, all of the physicians and consultants who either treated Plaintiff or reviewed her medical records agreed that Plaintiff had certain physical limitations as a result of her shoulder pain and surgeries.  And it is notable that when Defendant terminated Plaintiff's benefits it found her capable of working only at a light duty level, rather than at a higher level which would entail greater physical strength and capacity.

---

[7] Importantly, each medical opinion provided for the Defendant's review differed slightly from each other.  Even the reports of Plaintiff's two treating physicians differed from one another in various ways.  Moreover, there were also several similarities between many of the repots, for example with regard to Plaintiff's ability to work full-time or as to the extent of her limitations.  Additionally, Defendant relied upon more than the physician opinions, including circumstantial and contextual evidence of Plaintiff's abilities such as the fact that she was already working part-time in a light duty capacity.

Even though Plaintiff maintains that she can only work at a sedentary level, her disagreement with Defendant's ultimate finding of light-duty capability does not mean that Defendant ignored her self-reported pain and limitation entirely; rather, a finding of light-duty capability necessarily entails a finding that some limitation exists.  Once again, therefore, Plaintiff has asserted what amounts to merely a disagreement with Defendant's factual determinations and this disagreement is insufficient to rise to the level of a procedural irregularity.

Finally, Plaintiff contends that the vocational assessment performed by Defendant failed to differentiate between Plaintiff's own occupation and the purported reasonable occupations as to how she could perform those occupations with her limitations.  As noted previously, the Court is unsure what this means.  It appears from Plaintiff's supporting brief that the crux of this allegation is her disagreement with the result of the vocational analysis based on her belief that she is not capable of performing the occupations identified in the vocational analysis. She relies on a decision from the United States Court of Appeals for the Third Circuit, *Havens v. Continental Cas. Co.*, for the proposition that the determination of a claimant's capacity and the occupation's requirements must be detailed enough to make a rational comparison possible.  Defendant responds that the TSA/LMA was extremely detailed and accounted for Plaintiff's physician's

restrictions, as well as her transferrable skills and current part-time work as a

Clinical Nurse Instructor.

The *Havens* court found the defendant's conclusion that the plaintiff was

capable of performing alternate occupations to be arbitrary and capricious. *Havens*

*v. Continental Cas. Co.*, 186 Fed.Appx. 207, 212 (3d Cir. 2006). Specifically, it

stated, "[T]he claimant's capacity and the occupation's requirements . . . must

together be detailed enough to make rational comparison possible. Otherwise, the

'finding' that the claimant can perform alternate occupations consists only of a

bald assertion." *Id.* In that case, the defendant had access to several medical

opinions highlighting significant restrictions which it ignored entirely in

determining what occupations the plaintiff would be capable of performing. *Id.* at

213. Moreover, that court relied in large part upon the fact that the defendant had

failed to detail the physical requirements of the proposed alternate occupations,

describe them in any way, name any other source that might provide that

information, or even explain how these occupations were selected. *Id.* The court

held that a plan administrator "may reasonably rely on its vocational experts to

help it identify alternate occupations, but it is not rational to defer to such experts

in the absence of a threshold indication that their conclusions, in the words of

Federal Rule of Evidence 702, are the product of 'reliable principles and methods .

. . applied . . . reliably to the facts of the case.'" *Id.*

*Havens* is inapposite to the matter before the Court for several reasons. For one, the determinations of the TSA/LMA as to alternate occupations were predicated on certain reasonable physical limitations and restrictions.[8] Specifically, it considered that Plaintiff was capable of sedentary employment with restrictions on lifting, pushing, pulling, carrying, and a complete prohibition on reaching. Each position identified by the TSA/LMA was listed as sedentary strength work based on these restrictions and complied with the "no-reaching" restriction. It further identified each occupation by title, category and number, providing an easily accessible way for Plaintiff to determine the specific parameters of the job description. Moreover, the report was very clear as to the process by which it determined these positions were reasonable alternatives for Plaintiff. Consequently, the Court finds that there was nothing irregular in Defendant's decision to rely, in part, upon this analysis.

## IV. CLAIM FOR BENEFITS

Having found that the arbitrary and capricious standard of review applies, and taking into account the structural conflict posed by the Defendant's dual role as funder and administrator of the Plan, the Court now turns to Plaintiff's claim for

---

[8] Again, the Court notes that Plaintiff disagrees with the limitations adopted by the Defendant and considered in creating the TSA/LMA. However, that disagreement does not place the Defendant's conduct on par with the conduct of the defendant in *Havens*. In that case, the defendant refused to even consider medical opinions which were largely in agreement as to the plaintiff's restrictions in making its determination. Here, Defendant made a factual determination based on credible evidence as to the Plaintiff's restrictions, some of which Plaintiff's own treating physicians agreed with, and the TSA/LMA took those restrictions into account when generating a list of reasonable occupations of which Plaintiff was capable of performing.

benefits under ERISA § 501(a)(1)(B).  This claim is based on those same procedural irregularities discussed above; Plaintiff argues that because of these procedural irregularities, Defendant's decision to terminate her long term disability benefits was arbitrary and capricious.  As discussed above, Plaintiff has not provided any evidence to demonstrate that such procedural irregularities exist; rather, all of the procedural irregularities asserted by Plaintiff appear to be nothing more than disagreement with the factual determinations made by the Defendant and the Defendant's choice to weigh more heavily certain medical opinions of its consultants and the IME than select opinions of Plaintiff's own treating physicians.

Nevertheless, the important question in this analysis is whether there was substantial evidence to support Defendant's decision to terminate Plaintiff's benefits, regardless of the Plaintiff's opinion on whether the benefits should have been terminated.  Based on a cumulative examination of the evidence that was provided to the Defendant both before and after it chose to terminate Plaintiff's long term disability benefits, this Court is unable to say that Defendant abused its discretion in coming to that decision.  That is to say, whatever Plaintiff's disagreement with Defendant's factual determinations, there was substantial evidence for Defendant to conclude that Plaintiff was capable of working full time

in a light duty capacity.[9]  Specifically, Defendant relied upon the opinions of

qualified consultants who reviewed Plaintiff's medical records, the opinion of the

independent medical examiner, and the results of the TSA/LMA.  It looked at the

results of the FCE but concluded that the results were invalid based on the

examiner's statements that Plaintiff had put forth inconsistent efforts.  Finally, it

considered and ultimately rejected certain opinions of Plaintiff's treating

physicians.  It is not for this Court to say whether Defendant made the "right"

decision, only whether Defendant had substantial evidence on which to base its

decision.  I conclude today that it did.[10]  Consequently, Defendant's motion for

summary judgment is granted.

## V. CONCLUSION

In accordance with the foregoing reasoning, Defendant's motion for

summary judgment is granted and Plaintiff's motion for summary judgment is

denied.  Plaintiff's claim for long term disability benefits under ERISA § 1001, et

seq., is dismissed.

---

[9] It is important for the Court to note that there is, through both Plaintiff's and Defendant's Statements of Facts, internal conflicts as to what constitutes sedentary versus light duty work, and how those terms are employed by each physician.  The Court notes that sedentary work is typically defined as lifting up to 10 pounds *occasionally* throughout the day, while light duty work is defined as lifting up to 10 pounds *frequently*.  However, neither party makes clear whether each doctor in each instance recommended Plaintiff's ability to lift 10 pounds on a frequent or occasional basis. The failure to clearly outline this makes it that much more difficult for the Court to find that Defendant abused its discretion in terminating Plaintiff's benefits.

[10] Moreover, as stated above, Plaintiff has provided no evidence that Defendant's dual role affected its decision in any way; so, even though the Court has considered that structural conflict, it does not change my determination that Defendant's decision was not arbitrary and capricious.

BY THE COURT:


<u>s/ Matthew W. Brann</u>
Matthew W. Brann
United States District Judge